***********
Upon review of the competent evidence of record with references to the errors assigned, and finding no good cause to reconsider the evidence, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On or about 11 October 2000, plaintiff was employed by defendant-employer.
2. As of 11 October 2000, defendant-employer employed three or more employees, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. Plaintiff's average weekly wage will be determined from a Form 22 or comparable wage documentation.
4. At and subsequent to the hearing before the Deputy Commissioner, the parties submitted the following into the evidence of record:
a. Stipulated Exhibit 1-Pre-Trial Agreement
b. Stipulated Exhibit 2-A Packet of Medical Records
c. Stipulated Exhibit 3-A Packet of Industrial Commission Forms
d. Stipulated Exhibit 4-Plaintiff's Personnel File
e. Stipulated Exhibit 5-Plaintiff's Exhibits 1-10
a. Plaintiff's Exhibit 1-Plaintiff's time sheets
b. Plaintiff's Exhibit 2-Letter from Smokey Holler Tree Farm dated 20 March 2002
c. Plaintiff's Exhibit 3-Plaintiff's check stubs #s 15583, 15598, 15610
d. Plaintiff's Exhibit 4-Plaintiff's W-2 for 2001
e. Plaintiff's Exhibit 5-I.C. Form 18
f. Plaintiff's Exhibit 6-Amended I.C. Form 18
g. Plaintiff's Exhibit 7-I.C. Form 19
h. Plaintiff's Exhibit 8-I.C. Form 22
i. Plaintiff's Exhibit 9-Amended I.C. Form 22
j. Plaintiff's Exhibit 10-Letter from attorney David R. Paletta to Jaime Gasca dated 15 February 2002
f. Defendants Exhibit 1-An Associate Statement-Workers' Compensation,
g. Defendants Exhibit 2-A Transcript of a Recorded Statement
h. Defendants Exhibit 3-A Earnings History Report
i. Defendants Exhibit 4-A 26 October 2000 "Coaching for Improvement Form"
j. Defendants Exhibit 5-A 1 January 2001 "Coaching for Improvement Form"
k. Defendants Exhibit 6-A Performance Appraisal
l. Defendants Exhibit 7-A "Register Report" from Defendant-employer
5. The issues to be determined by the Commission are whether plaintiff sustained a compensable injury to her right and left shoulders on 11 October 2000, and/or whether she developed a compensable occupational disease; whether plaintiff is entitled to any permanent partial disability compensation; whether plaintiff is entitled to additional medical treatment to be paid by defendants; whether plaintiff is entitled to any total disability compensation, and;
whether plaintiff's claim barred for failing to provide timely notice to defendants.
 ***********
Based upon the foregoing stipulations and evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-one (41) years of age, with her date of birth being 26 March 1961. Prior to working for defendant-employer in North Carolina, plaintiff worked for the company in New York for approximately two and one-half.
2. In defendant-employer's North Carolina facility, plaintiff worked as a cashier, with her duties involving the scanning of items sold by defendant-employer at a checkout lane. Plaintiff worked in this capacity for approximately six months prior to the date of the incident giving rise to this claim.
3. On a typical workday, plaintiff could scan thousands of items at a rate of over four-hundred (400) items per hour. The size and weight of the items scanned by plaintiff varied. With heavier items, plaintiff testified that it was her normal procedure to peel off the bar codes from the items and then to scan the bar codes. However, plaintiff's work could involve lifting of items weight as much fifty (50) pounds. After the items were scanned, plaintiff would place the items into a bag, and then into a cart. Plaintiff usually worked ten (10) hour shifts, and thirty (30) to fifty (50) hours per week.
4. On 11 October 2000, plaintiff reported to work at approximately 4:00 p.m., and was scheduled to work until 2:00 a.m. the next morning. Toward the end of her shift, plaintiff testified that she had to lift a fifty (50) pound bag of Old Roy brand dog food out of a cart and onto the counter to be scanned. Plaintiff further testified that immediately upon lifting the bag, she experienced the onset of pain in her right shoulder, and that the severity of the pain was such that she was crying and forced to leave work early.
5. As for notice to defendants, plaintiff testified that she reported the injury of her right shoulder later in the shift to Ms. Tina Moss, her Customer Service Manager, and to a Ms. Stacy Barber in defendant-employer's personnel department. However, in her "Associate Statement-Workers Compensation," which she signed on 27 February 2001, plaintiff indicated that she did not report the injury to defendant-employer until 19 February 2001, at which time she reported it to Ms. Stacy Barber.
6. Prior to beginning her employment with defendant-employer, plaintiff had sustained a right shoulder injury on 19 February 1992 while working as a certified nursing assistant. For this earlier injury, plaintiff received treatment at the Miller Orthopaedic Clinic, and was released on 1 July 1993 with a forty percent (40) permanent partial disability rating to her right upper extremity.
7. Following the incident she testified to have occurred, plaintiff sought medical treatment with Dr. Donald D'Alessandro. With regard to the left shoulder, x-rays revealed significant calcific rotator cuff tendinitis for which plaintiff was given a subacromil injection. With regard to both shoulders, Dr. D'Alessandro assigned permanent work restrictions of no repetitive lifting and no lifting greater than ten (10) pounds.
8. Plaintiff has also been examined by Dr. Patrick Hayes, who initially saw her on 3 July 2002. Following his examination and review of her medical records, Dr. Hayes opined that plaintiff would have to accept the permanent condition of her right shoulder. With regard to the left shoulder, Dr. Hayes recommended a diagnostic and therapeutic arthroscopy to excise the calcific mass and to perform a subacromil decompression, and these procedures were performed by Dr. Hayes on 14 August 2002. Following these procedures, plaintiff continued to experience pain and episodes of her left shoulder falling out of place. Physical therapy was then attempted, but plaintiff could not tolerate the range of motion exercises because her left shoulder repeatedly slipped out of place. Because of plaintiff's continued symptoms, on 12 December 2002, Dr. Hayes performed a left anterior and inferior capsular shift. At the time of Dr. Hayes' deposition on 18 March 2003, plaintiff remained under his medical care
9. Nothing in plaintiff's description of the incident giving rise to this claim constituted an interruption of her regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Therefore, plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer on 11 October 2000.
10. Regarding a repetitive motion occupational disease, Dr. D'Alessandro has testified that in his opinion, there is a clear relationship between plaintiff's repetitive motion job as a cashier, and the calcific degeneration to her left shoulder. However, Dr. Hayes opined that it was more likely that plaintiff's biological structure was cause of her left and right shoulder problems which are at issue. Dr. Hayes explained that the genetic design of plaintiff's shoulders were such that she would have periodic flare-ups of symptoms even without a repetitive motion job.
11. Given the totality of the credible lay and medical evidence of record, the Full Commission finds that plaintiff's employment with defendant-employer did not cause nor significantly contribute to the shoulder problems she experienced subsequent to 11 October 2000.
12. The Full Commission finds there is no competent medical evidence upon which to find that plaintiff's employment with defendant-employer placed her at an increased risk of developing these types of shoulder problems as opposed to the general public not so employed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Because nothing in plaintiff's description of the incident giving rise to this claim constituted an interruption of her regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences, plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer on 11 October 2000. N.C. Gen. Stat. § 97-2(6).
2. There is insufficient credible evidence of record upon which to conclude that plaintiff's employment with defendant-employer caused or significantly contributed the shoulder problems she experienced subsequent to 11 October 2000. N.C. Gen. Stat. §97-53(13).
3. Because there is no competent medical evidence upon which to find that plaintiff's employment with defendant-employer placed her at an increased risk of developing these types of shoulder problems as opposed to the general public not so employed, plaintiff has not contracted a compensable occupational disease.Id.
4. Plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits associated with either an injury by accident or an occupational disease must be, and is HEREBY DENIED.
2. Each side shall bear its own costs.
This the ___ day of April 2004.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CS/kjd